UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBIN DISTISO, ppa of NICHOLAS DISTISO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:05cv01910 (PCD) |
| | : | |
| TOWN OF WOLCOTT, WOLCOTT BOARD OF | : | |
| EDUCATION, THOMAS SMYTH | : | |
| (Superintendent of Schools), JOHN COOK, | : | |
| JACQUELINE UCCELLO, and TAMMY | : | |
| COUTURE | : | |

## RULING ON MOTIONS TO DISMISS

Pending are Defendants' Motion To Dismiss for Want of Subject Matter Jurisdiction,

brought pursuant to Fed. R. Civ. P. 12(b)(1) [Doc. No. 20], and Motion to Dismiss for Failure to

State a Claim upon which Relief can be Granted, brought pursuant to Fed. R. Civ. P. 12(b)(6)

[Doc. No.  24].  For the reasons discussed below, the motions are **granted in part** and **denied in**

**part**.

## I.    BACKGROUND[1]

A child's relation to a school system and its personnel is the focus of this case.  In a

superabundance of enthusiasm, Plaintiff Robin DiStiso, acting per prochein ami on behalf of her

son, Nicholas DiStiso, filed the 19-count Complaint in this action on November 29, 2005.  In

2002, Nicholas was enrolled in kindergarten in the Wakelee elementary school in the Town of

Wolcott (the "Town"), and in 2003 he advanced to first grade.  (Complaint ¶ 14.)  This was

Nicholas's first school experience, and Nicholas, who is African-American, was the only African-

---

[1]     A court considering a motion to dismiss under Rules 12(b)(1) or 12(b)(6) must accept the facts
alleged in the complaint as true.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Accordingly, the
statement of facts that follows is derived solely from Plaintiff's Complaint.

American student in either of his classrooms.  (Id. ¶¶ 9, 13.)  Only one percent of the student

population in the Town was African-American.  (Id. ¶ 12.)  According to Plaintiff DiStiso,

students, teachers, and administrators subjected Nicholas to racial discrimination and harassment,

constituting a continuous course of conduct by the Defendants.  (Id. ¶ 15.)  Specifically,

Nicholas's classmates allegedly called him "nigger," "blackie," and "dirty" (id. ¶ 17) and

physically abused him (id. ¶ 18), and, despite Ms. Distiso's complaints, neither Jacqueline

Uccello, Nicholas's kindergarten teacher, nor John Cook, the Wakelee principal, attempted to stop

such harassment.  (Id. ¶¶ 21-23.)  This harassment allegedly caused Nicholas to suffer "fear,"

"terror," "severe anxiety," and "mental and emotional distress."  (Id. ¶ 24.)  The Complaint also

alleges that the individual Defendants directly discriminated against Nicholas because of his race.

Defendant Uccello allegedly forced Nicholas to use a "dark brown" crayon when drawing his self-

portrait.  (Id. ¶ 25.)  According to the Complaint, Tammy Couture, Nicholas's first-grade teacher,

"forcibly grabbed Nicholas by the right arm, pulled him out of his chair and dragged him to the

classroom door" (id. ¶ 36), which caused him to "become further terrified and anxious."  (Id. ¶

37.)  After Plaintiff complained that Nicholas had been harassed and discriminated against on

account of his race, Defendants allegedly falsely claimed the Nicholas has neurological problems

and insisted on classifying Nicholas as a special educational student.  (Id. ¶¶ 26-30.)

Plaintiff alleges pursuant to 42 U.S.C. § 1981 (Counts One, Four, Seven, and Twelve) and

42 U.S.C. § 1983 (Counts Two, Five, Eight, and Thirteen) that Defendants the Town, the Wolcott

Board of Education (the "Board"), Dr. Thomas Smyth, superintendent of the Wolcott schools, Mr.

Cook, Ms. Uccello, and Ms. Couture violated Nicholas's rights to equal protection and due

process as provided by the Fourteenth Amendment.  Plaintiff also alleges that: Dr. Smyth, the

Board, and the Town are liable pursuant to the <u>Monell</u> doctrine (Counts Sixteen, Eighteen, and

Nineteen); Dr. Smyth and the Board are liable for negligent supervision of their staff (Counts

Fifteen and Seventeen); Defendant Couture is liable for assault and battery (Counts Ten and

Eleven); and all Defendants are liable for intentional infliction of emotional distress (Counts

Three, Six, Nine, and Fourteen).

## II.     STANDARD OF REVIEW

### A.     Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it.  <u>See</u> Fed. R.

Civ. P. 12(b)(1).  Plaintiff, as the party asserting subject matter jurisdiction, has the burden of

establishing by a preponderance of the evidence that it exists, <u>Malik v. Meissner</u>, 82 F.3d 560, 562

(2d Cir. 1996), and the Court should not draw argumentative inferences in her favor.  <u>Atl. Mut.</u>

<u>Ins. Co. v. Balfour MacLaine Int'l</u>, 968 F.2d 196, 198 (2d Cir. 1992).  Unlike with a Rule 12(b)(6)

motion, a court resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction may refer

to evidence outside the pleadings.  <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000)

(citing <u>Kamen v. Am. Tel. & Tel. Co.</u>, 791 F.2d 1006, 1011 (2d Cir. 1986)); <u>see also</u> <u>Zappia</u>

<u>Middle E. Constr. Co. v. Emirate of Abu Dhabi</u>, 215 F.3d 247, 253 (2d Cir. 2000) (in resolving a

Rule 12(b)(1) motion, district courts may "resolve the disputed jurisdictional fact issues by

referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an

evidentiary hearing").   A court must "look to the substance of the allegations to determine

jurisdiction." <u>Cargill Int'l S.A. v. M/T Pavel Dybenko</u>, 991 F.2d 1012, 1019 (2d Cir. 1993).

Defendants move to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure.  When a party moves to dismiss for lack of subject matter jurisdiction in addition to other reasons, "the court should consider the Rule (12)(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."  Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n., 896 F.2d 674, 678 (2d Cir. 1990).

### B.      Rule 12(b)(6)

The function of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof."  Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 776 (2d Cir. 1984) (citation omitted).  Therefore, when considering such a motion, the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  Dismissal of a complaint under Rule 12(b)(6) is appropriate only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "  Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  This standard is applied with even greater force where the plaintiff alleges civil rights violations.  Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836 (1994).

## III.   DISCUSSION

### A.      Motion to Dismiss for Want of Subject Matter Jurisdiction

Defendants move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss Counts One through Eight and Twelve through Nineteen for lack of subject matter jurisdiction on the grounds that

Plaintiff failed to exhaust her administrative remedies before filing this suit.  Defendants claim

that in kindergarten Nicholas variously manifested a need for special education and that their sole

motivation in dealing with him (documented by Defs.' Mot. to Dismiss for Lack of Subject Matter

Jurisdiction, Exs. A to OO)  was to identify his needs and devise an individualized educational

plan (IEP) that met his entitlement to a free and appropriate public education (FAPE) as provided

by the Individuals with Disabilities and Education Act ("IDEA"), 20 U.S.C. § 1415(1), and CONN.

GEN. STAT. § 10-76a, et seq.  Accordingly, Defendants maintain that this case is governed by the

IDEA, which abrogates Plaintiff's statutory, Monell, and common law claims she has not

complied with the IDEA's requirement of exhausting her administrative remedies made available

to her as part of her son's IEP.  § 1414(d)(2).  Defendants argue that the Board complied with the

procedural requirements of the IDEA, culminating in a due process hearing in which the Board

prevailed and Nicholas was ordered to participate in neuropsychological testing.  (Defs.' Mem. in

Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction at 2, 11-13.)  The DiStisos did

not appeal the hearing officer's order or initiate their own due process hearing to contest the

Board's action, and so, Defendants contend, Plaintiff has failed to meet the IDEA requirement that

a parent exhaust all administrative remedies available under the IDEA before bringing a civil

action in state or federal court.  (Id. at 2, 17-21; 20 U.S.C. § 1415(h); CONN. GEN. STAT. § 10-

76(H)(d)(4), § 4-183(a).)

_____Plaintiff concedes that she did not comply with the IDEA's exhaustion requirements.

However, she contends that she is not obligated to pursue such administrative remedies because

her claims are not founded not on, and do not seek remedies pursuant to, the IDEA.  Rather, her

claims are founded on racial discrimination and concomitant equal protection and due process

rights, and they sound in damages (compensatory and punitive) for intentional infliction of emotional distress, negligent supervision, assault and battery, and reimbursement of education expenses and attorney fees under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §§ 1981 and 1983.  Specifically, Plaintiff claims her son was the object of verbal and physical abuse by classmates which, though complained of, was not stopped nor corrected by Defendants.  Plaintiff contends that her son's being deemed a special needs child was not required on the basis of his being disabled but occurred because Defendants singled him out because of his race.  (Pl.'s Opp. to Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction at 10-14; Compl. ¶¶ 28-33.)  Plaintiff also notes that she exhausted her administrative remedies through her filing with the Connecticut Commission on Human Rights and Opportunities, the proper state agency, as opposed to the Board, in which to adjudicate claims of racial discrimination in public schools.  (Id. at15-16.)  While Plaintiff disclaims any reliance on the IDEA, she does allege that Defendants denied Nicholas of his entitlement to a "free and appropriate public education" (Compl. ¶ 50), a direct quote from the IDEA.  20 U.S.C. § 1414(d).

       In opposing Defendants' motion, Plaintiff relies heavily on several references in the IDEA to "disabled children" and "children with disabilities," which she contends render the IDEA inapplicable to her claims because Nicholas is not, in her view, disabled.  (Pl.'s Opp. to Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction at 8-10.)  Such a simplistic approach to the facts of the case and the available legal frameworks is an insufficient argument as it ignores the obligation of a school system to respond to a disabled child.  Schaffer v. Weast, 546 U.S. 49, 126 S.Ct 528, 532 (2005).  The IDEA requires state educational authorities to identify and evaluate disabled children, including testing a child's condition to determine his needs if

necessary.  20 U.S.C. §§ 1414(a)-(c).  Once a child is determined to be disabled, a state

educational authority must develop and implement an IEP for him or her, § 1414(d)(2), and

review every IEP at least once a year.  § 1414(d)(4).  Each IEP must include an assessment of the

child's current educational performance, articulate measurable educational goals, and specify the

nature of the special services that the school will provide.  § 1414(d)(1)(A).  Central to the

statutory framework is "the cooperative process that it establishes between parents and schools."

Schaffer, 126 S.Ct. at 532.  However, while a parent is entitled to participate in the IEP

development and review process, a parent cannot have the final say in the process.  The IDEA is

designed to meet the needs of, and thus fulfill the rights of, the child.  No matter how interested a

parent may be in meeting the needs of her child, the IDEA protects and promotes a child's rights

by establishing procedural safeguards through which educational authorities can determine and

fulfill disabled children's needs.  See 20 U.S.C. § 1401 et seq.; CONN. GEN. STAT. § 10-76a et

seq.  If, without exhausting the statutory procedures, a school system simply abandoned the

process in response to a parent's objections, the school system may fail to fulfill its obligations to

provide special education for a child who is entitled to one.  In this case, Defendants identified

Nicholas's special education needs and were accordingly obliged to pursue the IDEA process,

regardless of his parents' opinion of whether he is disabled.  Because the IDEA process was

triggered and covered review of Plaintiff's son's educational situation, Plaintiff was obliged to

exhaust her administrative records before filing suit in this Court.  Without her having done so,

the Court does not have subject matter jurisdiction over claims grounded in the IDEA.

_____Any of Plaintiff's claims which are based on conduct pursuant to the Defendants'

obligations under the IDEA cannot stand, even if they are claims for relief not provided by the

IDEA.  Plaintiff asserts discrimination by Defendants on the basis of her son's "race and color" and as retaliation for "Plaintiff's complaints of racial harassment and discrimination."  (Pl.'s Opp. to Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction at 10-11.)  Plaintiff maintains that such discrimination allegedly resulted in Defendants' allegedly false claim that her son required special education, a determination allegedly made contrary to the approach Defendants took with white students.  Among the adverse results claimed as a result of Defendants' alleged actions is "the loss of the benefit of a free public education."  (Compl. ¶ 50.)  Unlike the typical IDEA complaint, Plaintiff does not assert a failure by the school to provide the IEP needed by a disabled child; rather, Defendants' conduct was allegedly discriminatory in that they allegedly sought to force the child into a special education program because of his race/color and/or in retaliation for Plaintiff's complaints of racial harassment of the child and not because the child was disabled.  To the extent Defendants acted in compliance with the IDEA, they are insulated from claims of discrimination until all administrative remedies provided for by the IDEA are exhausted.  § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution ... or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.").  See also Polera v. Bd. of Educ. of Newburgh, 288 F.3d 478, 481-82 (2d Cir. 2002).  The fact that Plaintiff seeks money damages, relief not available under IDEA, does not remove her case from the exhaustion requirement because the conduct on which some of her claims are based was undertaken by Defendants in attempted compliance with the

IDEA.  See id. at 487.  The Defendants' pursuit of the IDEA procedures presented Plaintiff with the opportunity to challenge the proffered IEP and the proposed neuropsychological testing by making a simple request for a due process hearing pursuant to § 1415(f), as well as the obligation to do so before filing suit in this Court.  See Riley v. Ambach, 668 F.2d 635, 640 (2d Cir. 1981). Thus to the extent Plaintiff's claims are founded on conduct mandated by the IDEA, they are foreclosed from being pursued in this case by reason of Plaintiff's failure to exhaust the administrative remedies provided by the IDEA.  See Mrs. M. v. Bridgeport Bd. of Educ., 96 F. Supp. 2d 124 (D. Conn. 2000).

_____To the extent the complaint could be construed to allege claims under the IDEA, even though such claims are disavowed by Plaintiff or cloaked in legal theories distinct from the IDEA, those claims are dismissed for lack of subject matter jurisdiction.  Left standing by this determination are Plaintiff's claims, to the extent they are based on conduct other than that pursuant to the IDEA, of racial discrimination based on Defendants' allegedly deliberate indifference to the alleged racial harassment by Nicholas's classmates, and state law claims of intentional infliction of emotional distress, negligence, and assault and battery.

##### B.      Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted_____

_____After dismissal of those aspects of Plaintiff's claims as discussed in Section A, supra, Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is considered as to the remaining claims.  A motion to dismiss should only be granted when the allegations of the complaint, construed in the light most favorable to the Plaintiff, fail to state a claim on the basis of which relief can be granted.  Conley v. Gibson, 355 U.S. 41. 45-46 (1957); Williams v. Avco Lycoming, 755 F. Supp. 47, 49 (D. Conn. 1991). _____

### 1. 42 U.S.C. § 1983 (Counts One, Four, and Twelve)

Defendants move to dismiss Counts One, Four, and Twelve, alleging Defendants Cook's, Uccello's, and Smyth's violation of Plaintiff's son's equal protection and due process rights under the Fourteenth Amendment and claiming damages under 42 U.S.C. § 1983, on the grounds that these defendants are entitled to qualified immunity.  According to the Complaint, Plaintiff communicated to Mr. Cook and Ms. Uccello that Nicholas's classmates were actively harassing and verbally and physically abusing him because of his race, and Mr. Cook's and Ms. Uccello's failure to act on those complaints resulted in Nicholas's fear, terror, severe anxiety, and mental and emotional distress.  (Compl. ¶¶ 21-24.)  The only specific incidents of racially discriminatory harassment alleged are: his being called "nigger," "blackie," and "dirty" (id. ¶ 17); his being hit and kicked (id. ¶ 18); Ms. Uccello's directing him to use a brown crayon to draw his self-portrait (id. ¶ 25); and Ms. Couture's dragging him by the arm.  (Id. ¶ 36.)  No specific physical injury is alleged.  In their motion to dismiss, Defendants assert that no clearly established constitutional right is described in any of these four counts and thus all individual Defendants are entitled to qualified immunity.

A government official sued in his or her individual capacity is entitled to qualified immunity if the "plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred" or if "the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." Rapkin v. Rocque, 228 F. Supp. 2d 142, 145-46 (D. Conn. 2002) (citing Munafo v. Metro. Transp. Auth., 285 F.3d 201, 210 (2d Cir. 2002)).  See also Saucier v. Katz, 533 U.S. 194, 201 (2001); Anderson v. Creighton, 483 U.S. 635, 639-40 (1987).  The standard for establishing

-10-

qualified immunity is particularly stringent on a Rule 12(b)(6) motion.  McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).  "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled im to relief."  Id. (internal citations and quotation marks omitted).

Courts have routinely held that schoolteachers, administrators, and boards of education can be held liable for race discrimination in violation of the Fourteenth Amendment if they have been deliberately indifferent to the harassment of a student at school by other children.  Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 140 (2d Cir. 1999).  See also Davis v. Monroe County Bd. of Educ., 526 U.S. 629 (1999); Murrell v. Sch. Dist. No. 1, 186 F.3d 1238, 1249-51 (10th Cir. 1999).  A defendant's deliberate indifference to discrimination can be shown from his or her actions or inaction in light of known circumstances, though a plaintiff must ultimately show that the defendant's indifference was such that he intended the discrimination to occur.  Gant, 195 F.3d at 141.  In this case, Plaintiff's allegations with respect to her claims of co-student racial harassment, about which Plaintiff allegedly complained to Defendants Cook and Uccello, are sufficient to establish a cause of action under the theory endorsed by Gant for deliberate indifference to racial discrimination.  Id.  Accepting the allegations in the complaint as true, these Defendants deliberately ignored Plaintiff's complaints of her son's experience of discriminatory harassment, and they retaliated against him on the basis of his race.  Because the alleged deliberate indifference by these Defendants violated clearly established rights under the Equal Protection Clause of the 14th Amendment to be free from race-based discrimination, see id., these Defendants are not entitled to qualified immunity.  Accordingly, the motion to dismiss

-11-

the claims brought under § 1983 against Defendants Cook and Couture (Counts One and Four) cannot be granted.

_____Plaintiffs § 1983 claim against Defendant Smyth, on the other hand, is dismissed on the basis of qualified immunity.  The only specific allegation in the Complaint about Dr. Smyth's conduct is that he refused to transfer Nicholas to another school unless Plaintiff agreed to withdraw her claims against the Defendants.  (Compl. ¶¶ 38-40.)  Defendants argue that Dr. Smyth's purported attempt to broker a settlement with the DiStisos cannot be construed as a violation of any federal law.  (Defs.' Mot. to Dismiss at 9.)  In addition to the fact that federal law encourages settlement agreements instead of protracted litigation, see In re Tamoxifen Citrate Antitrust Litigation, 429 F.3d 370, 386 (2d Cir. 2005), neither Dr. Smyth's effort to negotiate a settlement with the DiStisos nor his alleged failure to transfer Nicholas when the DiStisos didn't agree to his terms can be found to constitute deliberate indifference to their complaints of racial harassment of Nicholas.   Absent any further allegation of involvement on the part of Smyth, Plaintiff's suggestion that he be considered to be charged with every other allegation of discrimination by "defendants" is unavailing.  (Pl.'s Opp. to Defs.' Mot. to Dismiss at 16.)  Dr. Smyth is entitled to know what he is charged with and to rely on the limited allegations specifically attributed to him.  On the basis of the limited allegations made against Dr. Smyth in the complaint, Plaintiff has failed to plead a claim of Dr. Smyth's deliberate indifference to the allegedly discriminatory school treatment of Nicholas.  Dr. Smyth is therefore immune from personal liability for this allegation, and the Section 1983 claim brought against him in his personal capacity (Count Twelve) is dismissed.

**B.     42 U.S.C. § 1981 (Counts Two, Five, Eight, and Thirteen)**

Defendants move to dismiss Plaintiff's claims brought pursuant to 42 U.S.C. § 1981 on

the basis that Plaintiff has made no allegation of any contractual relationship between the child, of whom Plaintiff is prochien ami, and any Defendant as required by the plain text of the statute. Citing Domino's Pizza, Inc. v. McDonald, No. 04-593, 2006 WL 397917, at *1 (Feb. 22, 2006), Defendants argue that the only rights recognized in § 1981 are those that arise from making and enforcing contracts with the opposing parties, and, as Plaintiff's claims have no such origin, her claims brought under § 1981 must be dismissed.  (Defs.' Mot. to Dismiss at 20.)  In response, Plaintiff makes no distinct argument with respect to the holding of Domino's Pizza, but she alludes to the ruling in Gant ex rel Gant v. Wallingford Bd. of Educ., 195 F.3d at 140, which did not differentiate between a plaintiff's claims of deliberate indifference to student-on-student racial harassment brought pursuant to both §§ 1981 and 1983.  (See Pl.'s Opp. to Defs.' Mot. to Dismiss at 12.)  The Gant court's reasons for not discussing the contract requirement of § 1981 no longer matter because the Supreme Court's decision in Domino's Pizza now clearly applies to all § 1981 claims.  Accordingly, because Plaintiff has not alleged any contractual relationship between Nicholas and any of the Defendants, her claims brought pursuant to § 1981 fail to state a claim upon which relief can be granted.  To the extent the Defendants' motion seeks dismissal of all § 1981 claims (Counts Two, Five, Eight, and Thirteen), it is granted.  Because most of Plaintiff's discrimination claims brought pursuant to § 1983 remain, Plaintiff's chances for relief are not significantly affected by this ruling.

### C.    Intentional Infliction of Emotional Distress (Counts Three, Six, Nine, and Fourteen)

Defendants move to dismiss Plaintiff's state law claims of intentional infliction of emotional distress on the grounds that she has failed to allege a necessary element of her claims, namely that Defendants' conduct was "extreme and outrageous."  (Defs.' Mot. to Dismiss at 27-

32.)  To establish a prima facie case of intentional infliction of emotional distress under

Connecticut law, Plaintiff must allege in her complaint that: (1) the defendants intended to inflict

emotional distress on the plaintiff or knew or should have known that their conduct was likely to

result in emotional distress; (2) the defendants' conduct was "extreme and outrageous"; (3) the

defendants' conduct caused plaintiff's distress; and (4) the plaintiff's emotional distress was

"severe."  Petyan v. Ellis, 200 Conn. 243, 253 (1986), superseded by statute on other grounds as

recognized in Chadha v. Charlotte Hungerford Hosp., 272 Conn. 776 (2005).  To the extent

Plaintiff's claims remain, the Complaint alleges that Nicholas was subjected to racially

derogatory, insulting, and demoralizing verbal harassment and abuse and that Defendants failed to

respond to complaints of such harassment.  The Complaint also alleges that Nicholas experienced

serious emotional distress as a result of Defendants' extreme and outrageous conduct.  Whether

Defendants' actions rise to the level of "extreme and outrageous" behavior, and whether the

severity of Nicholas's distress can be attributed to such behavior, cannot be definitively discerned

at this time.  All that needs to be shown at this point, however, is that Plaintiff has alleged facts

satisfying each prong of the prima facie case for the tort of intentional infliction of emotional

distress, which she clearly has.  Accordingly, Defendants' motion to dismiss these claims (Counts

Three, Six, and Fourteen) is denied.

       **D.**      **<u>Monell</u> Claims and Governmental Immunity**

      Defendants move to dismiss the claims in Counts Two, Five, Eight, Thirteen, Fifteen, and

Sixteen as duplicative of a Monell claim for municipal liability.  See Monell v. Dep't of Soc.

Servs. of the City of New York, 436 U.S. 658 (1978).  Because the Court has already concluded

for the reasons stated above that Counts Two, Five, Eight, and Thirteen should be dismissed, it

considers Defendants' <u>Monell</u> argument only in regards to Counts Fifteen and Sixteen, alleging

liability on the part of Dr. Smyth for negligent supervision of school employees.  Under <u>Monell</u>, a

municipality and/or a board of education can be held liable for an official policy that, when

applied by an employee, deprives a person of a constitutional right.  <u>Monell</u>, 436 U.S. at 691.  On

this basis, Plaintiff has brought claims against the Board and against the Town for municipal

liability (Counts Seventeen and Nineteen).  A suit naming an individual in his "official capacity,"

however, is equivalent to suing the municipality and/or a board of education in which the

individual works.  <u>McMillian v. Monroe County</u>, 520 U.S. 781, 785 n.2 (1997); <u>Kentucky v.

Graham</u>, 473 U.S. 159, 165 (1985); <u>Monell</u>, 436 U.S. at 690 n. 55.  Accordingly, Count Sixteen,

claiming Dr. Smyth's municipal liability for negligent supervision, is duplicative of Count

Seventeen, which claims the Board's liability for negligent supervision, and is therefore

dismissed.

Count Fifteen, on the other hand, alleges Dr. Smyth's personal liability for a state law

negligence claim.  Read in the light most favorable to the Plaintiff, <u>see</u> <u>Phillips v. Girdich</u>, 408

F.3d 124, 128 (2d Cir. 2005) ("complaints must be read liberally"), the Court considers Count

Fifteen as naming Dr. Smyth in his individual capacity, and so it is not duplicative of the <u>Monell</u>

claim against the Board for municipal liability.  Accordingly, Defendants' motion to dismiss

Count Fifteen is denied.

### F.    Negligence Claims

Defendants also move to dismiss Count Seventeen against the Board on the grounds that it

is barred by governmental immunity.  Section 52-557n of the Connecticut General Statutes

provides that a municipality is immune from liability for negligence, CONN.GEN.STAT. § 52-

557n(a)(2)(B), unless Plaintiff cites to a statutory authority abrogating that immunity.  <u>Williams v. City of New Haven,</u> 243 Conn. 763, 766-67 (1998).  <u>See also</u> <u>Gordon v. Bridgeport Housing Authority</u>, 208 Conn. 161, 165 (1988); <u>Ryszkiewicz v. New Britain</u>, 193 Conn. 589, 593 (1984).  Plaintiff DiStiso has not argued nor cited authority in this case which abrogates the Board's governmental immunity.  Therefore, Count Seventeen is dismissed.

## IV.   CONCLUSION

Defendants' motions to dismiss [Doc. Nos. 20, 24] are both **granted in part** and **denied in part.**  The claims that remain are:

> a) Claims pursuant to 42 U.S.C. § 1983 based on allegations of racially motivated deliberate indifference to student harassment of Plaintiff's son (Counts One, Four, and Seven);
>
> b) State law claims of intentional infliction of emotional distress based on allegations of Defendants' inaction in response to student harassment of Plaintiff's son (Counts Three, Six, Nine, and Fourteen);
>
> c) <u>Monell</u> claims against the Town and Board of Education for alleged deprivation of Plaintiff's son's constitutional rights (Counts Eighteen and Nineteen);
>
> d) State law negligence claims against Defendant Smyth for negligent training and supervision based on claims of his subordinates' inaction in response to student harassment of Plaintiff's son (Count Fifteen);
>
> e) State law assault and battery claims against Defendant Couture (Counts Ten and Eleven).

All other claims (Counts Two, Five, Eight, Twelve, Thirteen, Sixteen, and Seventeen) are **dismissed** for the reasons discussed above.

SO ORDERED.

Dated at New Haven, Connecticut, this  _16<u>th</u>_  day of November, 2006.

_____
/s/
Peter C. Dorsey, U.S. District Judge
District of Connecticut

-16-