UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBIN DiSTISO, as Next Friend of<br>NICHOLAS DiSTISO,<br>    Plaintiff,<br><br>v.<br><br>TOWN OF WOLCOTT ET AL.,<br>    Defendants. | CIVIL ACTION NO.<br>3:05-cv-01910 (VLB)<br><br>March 20, 2008 |

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [Docs. #49, 50, 51, 52, 53, 54]

Before the Court are six motions to dismiss a complaint filed by the plaintiff, Robin DiStiso, on behalf of her son, Nicholas DiStiso, asserting various claims arising from a series of allegedly racially discriminatory incidents. The defendants are the Town of Wolcott, Connecticut ("town"); the Wolcott Board of Education ("board"); Thomas Smyth, superintendent of Wolcott schools; John Cook, principal of Wakelee Elementary School in Wolcott; Jacqueline Uccello, kindergarten teacher at Wakelee; and Tammy Couture, first grade teacher at Wakelee.

Senior United States District Judge Peter C. Dorsey previously dismissed seven of the nineteen counts of the complaint. See DiStiso v. Town of Wolcott, Docket No. 3:05-cv-1910 (PCD), 2006 WL 3355174 (D. Conn. Nov. 17, 2006). The twelve remaining counts may be grouped into the following categories: (1) Cook, Uccello, and Couture violated 42 U.S.C. § 1983 because they were deliberately indifferent to the racial discrimination that Nicholas allegedly suffered at Wakelee

(counts one, four, and seven); (2) Cook, Uccello, Couture, and Smyth intentionally inflicted emotional distress on Nicholas by failing to stop the racial discrimination (counts three, six, nine, and fourteen); (3) the town and board failed to train and supervise the Wakelee staff to protect Nicholas from racial discrimination (counts eighteen and nineteen); (4) Smyth negligently failed to train and supervise the Wakelee staff to protect Nicholas from racial discrimination (count fifteen); and (5) Couture committed assault and battery against Nicholas (counts ten and eleven). The defendants have filed motions for summary judgment as to all of those remaining counts. For the reasons given below, summary judgment is GRANTED as to the counts alleging that the town, board, and Smyth failed to train and supervise the Wakelee staff (counts fifteen, eighteen, and nineteen) and DENIED as to all other counts.

The following undisputed facts are relevant to the defendants' motions for summary judgment. Robin DiStiso alleged in her complaint that Nicholas, the only African-American student in his kindergarten and first grade classes at Wakelee, was the target of racial slurs and racially motivated physical abuse by his classmates at school and that none of the defendants did anything to stop the discriminatory conduct. Robin DiStiso and her husband, Philip DiStiso, Nicholas's father, both testified at their depositions that Nicholas told them and often came home upset about the racially motivated conduct. Robin and Philip DiStiso acknowledge that they did not witness the alleged in-school discrimination themselves and that they know about it only because Nicholas told

them about it and they observed that he was often upset about events that had happened at school.

Nicholas was deposed on February 24, 2006, when he was eight years old, which was three and a half years after the alleged incidents began to occur. The content of his testimony is difficult to depict because it is unclear whether he understood the questions he was asked and whether his truthful answers to questions were the answers he gave initially or those he gave after the questions were asked multiple times. For example, he indicated approximately six times that he did not know what it meant to tell the truth, but then appeared to testify that he understood the concept:

> Q: Okay. So if something didn't happen and you say it happened, that's not telling the truth. Okay?
> A: Uh-huh.
> Q: Do you understand that?
> A: Yeah.

[Doc. #55, Ex. L, p. 10]. Nicholas later indicated that "mean kids" at Wakelee had called him "bad names" [Doc. #55, Ex. L, pp. 49-50], but it is unclear whether he actually remembered being the target of racial slurs:

> Q: Okay. Do you remember any of the names they called you?
> A: Uh-huh.
> Q: Okay. What'd they say?
> A: N word.
> Q: They said the N word. Okay. Who said the N word. Do you remember?
> A: No.
> . . . .

> Q: Okay. Nicholas, I got a question for you. Do you remember the day that somebody said the N word to you, or are you remembering what your mom said to you yesterday?
> A: Yeah, what my mom said to me yesterday.
> Q: Okay. You don't remember when somebody called you the N word, do you?
> A: No.

[Doc. #55, Ex. L, pp. 52-53].

Robin DiStiso relies entirely on her deposition testimony and the deposition testimony of Philip and Nicholas DiStiso in order to show that Nicholas suffered racial discrimination at Wakelee. Robin and Philip DiStiso testified that they told the Wakelee principal, Cook, and Nicholas's teacher, Uccello, about the racially motivated conduct during Nicholas's year in kindergarten but that Cook and Uccello failed to respond to the reported conduct. Cook and Uccello have filed affidavits denying that the DiStisos informed them about the conduct and stating that they had not witnessed any such conduct against Nicholas.

In May 2003, at the end of Nicholas's year in kindergarten, Robin DiStiso filed a complaint against the board with the Connecticut Commission on Human Rights and Opportunities (CHRO). Cook and Uccello aver that the CHRO complaint gave them their first notice of the alleged discriminatory conduct. Cook further stated in his affidavit: "Once I learned of the allegations contained in the CHRO complaint, I conducted a full investigation into the matter. I interviewed Ms. Uccello. I did not find any evidence to support the allegation that

4

Nicholas's peers were harassing him because of his race or that Ms. Uccello was discriminating against him because of his race." [Doc. #55, Ex. D, p. 2] Smyth, the superintendent, also discussed the DiStisos' allegations with Cook and Uccello.

Several other incidents at Wakelee are also relevant to this action. According to Robin DiStiso, Uccello told Nicholas in June 2003 not to use a yellow crayon to color a drawing of his face and to use a brown crayon instead. Uccello denies telling Nicholas to use a brown crayon. It is unclear from Nicholas's deposition testimony whether he remembered the incident himself:

> Q: Yeah. Was [Uccello] a mean lady?
> A: Yeah.
> Q: What did she do to you?
> A: Give me the wrong crayon.
> Q: She gave you the wrong crayon. Really? And have you talked to anybody about her giving you the wrong crayon?
> A: Uh-huh.
> Q: Who'd you talk to?
> A: Mom.
> . . . .
> Q: It was last year? Okay. And when did she give you a brown crayon?
> A: In kindergarten.
> Q: In kindergarten. Okay. And what were you doing when that happened?
> A: I was coloring, coloring me, on my face with yellow.
> . . . .
> Q: Okay. So you were coloring your face with a yellow crayon? Right?
> A: Uh-huh.

5

> Q: And then what happened? Do you remember?
> A: No.
> Q: No, okay. Did your mom help remind you about what happened?
> A: Uh-huh.
> Q: Okay. When did she do that? Was it yesterday?
> A: Yeah.
> Q: Okay. But you don't remember what happened, do you?
> A: No.

[Doc. #55, Ex. L, pp. 19-22]. Nicholas's testimony regarding that incident was not developed. A literal interpretation of it is that he did not remember what had happened after Uccello gave him a brown crayon, although one could also interpret his testimony to be that he did not remember what had happened after he began using a yellow crayon. Robin and Philip DiStiso testified that Nicholas interpreted the crayon incident as an act of racial discrimination by Uccello. In further support of Uccello's position that she did not discriminate against Nicholas and was not aware of any discriminatory conduct by his classmates, the defendants offer the affidavit of Uccello's instructional assistant and eight affidavits from parents who volunteered in Uccello's class during school hours, stating that they did not witness any racially discriminatory behavior directed against Nicholas.

In the fall of 2003, while the CHRO complaint was pending, Nicholas began his first grade year with Couture as his teacher. Couture avers that she was unaware of the DiStisos' CHRO complaint and that neither Cook nor Uccello told her about the DiStisos' reports of racial discrimination against Nicholas. It is

unclear from Robin and Philip DiStiso's testimony whether they explicitly informed Couture about the alleged racial discrimination, but Robin DiStiso did send Couture a note suggesting that she had. The note read in part: "This is about the fifth time I sent you a note about one of Nicholas['s] classmates hitting him or kicking him. After every note, you respond by sending a note claiming Nicholas is misbehaving. . . . I know why you are doing this and [your] time will come when you can testify as to why! I can't believe how you can pick on a little boy just to satisfy Mr. Cook. This is wrong and you would not want someone to do this to your child. You obviously don't think that Nicholas knows what's going on. Well think again, because he sees and hears everything and he knows how you mistreat him and that is why the other children in the class mistreat him." [Doc. #55, Ex. HH] Taking the facts in the light most favorable to the DiStisos, the Court infers that Robin DiStiso was referring to racially discriminatory conduct in the first grade.

The DiStisos' conflict with the Wakelee staff finally resulted in the police being called to the school. Philip DiStiso called the police to Wakelee on March 15, 2004, claiming that Couture had assaulted Nicholas three days earlier. The police could not substantiate the allegation and therefore closed the case on March 18, 2004. Philip DiStiso also filed a complaint with the State of Connecticut Department of Children and Families (DCF), but DCF could not substantiate his allegation. Nicholas referred to the alleged assault when he was asked at his deposition whether Robin DiStiso had practiced his answers with

7

him:

> Q: Now, some of the questions that I just asked you, did you — did you practice those answers at all with your mom before today?
> A: Uh-huh.
> Q: You did. And which questions did you practice?
> A: The part about Mrs. Couture.
> . . . .
> Q: What did you practice with your mom yesterday about Mrs. Couture?
> A: She told me she pulled me out of the chair.
> Q: Okay. So you practiced that answer?
> A: Uh-huh.
> . . . .
> Q: Okay. Did you remember that thing where you said Ms. Couture pulled your arm? Did you remember that before your mom reminded you yesterday?
> A: Uh-huh.
> Q: You did? Yes?
> A: Yeah.
> Q: Okay. So what happened?
> A: She pulled me out — she pulled my arm out of the chair, dragged me across the floor, and bring me to the principal's office.
> . . . .
> Q: Okay. And did you practice that answer yesterday with your mom?
> A: Uh-huh.
> Q: Okay. How many times did you practice it?
> A: Five times.

[Doc. #55, Ex. L, pp. 30-31]. The DiStisos removed Nicholas from Wakelee after the alleged assault and placed him in a private school. In response to the assault allegation, the defendants offer affidavits signed by nine of Nicholas's

8

classmates stating that they did not see Couture assault him. A parent or guardian also signed each of those affidavits.

Having reviewed the relevant facts, the Court now turns to the defendants' motions for summary judgment. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006). "The moving party bears the burden of showing that he or she is entitled to summary judgment." Huminski, 396 F.3d at 69. "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

**The first issue to consider in the defendants' motions for summary judgment is whether Cook, Uccello, and Couture were deliberately indifferent to the racial discrimination that Nicholas allegedly experienced at Wakelee. The United States Court of Appeals for the Second Circuit has explained that "[i]n addressing [a] racial hostility claim, we must first decide when, if ever, schoolteachers, administrators, and boards of education can be held liable for race discrimination . . . based on their responses to harassment, in the school environment, of a student by other children or parents. . . . [T]o succeed on a claim of this nature, a plaintiff must show deliberate indifference on the part of the defendants themselves. . . . This is because, in cases of alleged student-on-student harassment, only deliberate indifference to such harassment can be viewed as discrimination by school officials themselves. . . .**

**"Deliberate indifference to discrimination can be shown from a defendant's actions or inaction in light of known circumstances. . . . The ultimate inquiry, of course, is one of discriminatory purpose on the part of the defendant himself. . . . [A] plaintiff must show that the defendant's indifference was such that the defendant intended the discrimination to occur. It is not necessary to prove that the defendant fully appreciated the harmful consequences of that discrimination, because deliberate indifference is not the same as action (or inaction) taken maliciously or sadistically for the very purpose of causing harm. . . . Instead, deliberate indifference can be found when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances. . . .**

The Supreme Court has pointedly reminded us, however, that this is not a mere reasonableness standard that transforms every school disciplinary decision into a jury question. . . . In an appropriate case, there is no reason why courts, on a motion . . . for summary judgment . . . could not identify a response as not clearly unreasonable as a matter of law." Gant ex rel. Gant v. Wallingford Board of Education, 195 F.3d 134, 140-41 (2d Cir. 1999).

As the Court's summary of the undisputed facts indicates, Robin and Philip DiStiso testified that they told Cook and Uccello about the racially motivated conduct against Nicholas, but Cook and Uccello averred that the DiStisos did not report the improper conduct prior to filing the CHRO complaint. Cook and Uccello also averred that they did not witness any improper conduct. Whether the alleged racially discriminatory conduct was known to Cook and Uccello prior to the filing of the CHRO complaint depends on the credibility of the parties involved. "Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." McClellan v. Smith, 439 F.3d 137, 148 (2d Cir. 2006). A reasonable jury could find that the DiStisos informed Cook and Uccello about the alleged improper conduct prior to the filing of the CHRO complaint. The jury would then determine whether the inaction of Cook and Uccello in light of the known circumstances constituted deliberate indifference to racial discrimination. The jury could also find that the responses of Cook and Uccello following the filing of the CHRO complaint constituted deliberate indifference because Cook averred

that his investigation into the allegations was limited to an interview with Uccello and the DiStisos testified that Uccello was involved in the brown crayon incident shortly after the filing of the CHRO complaint. As to Couture, it is undisputed that she had no knowledge of the CHRO complaint, and the DiStisos' testimony as to their communications with her creates a very close question whether she had actual knowledge of the allegedly discriminatory conduct. Because the question hinges entirely on credibility, the Court concludes that a reasonable jury could find that the DiStisos made the conduct known to Couture and that her inaction constituted deliberate indifference.

Although there are material facts in dispute as to the claim of deliberate indifference, the Court must consider the defense of qualified immunity because Cook, Uccello, and Couture have also raised it in their motions for summary judgment. "[Q]ualified immunity . . . shields a government official acting in an official capacity from suit for damages under § 1983 unless the official violated clearly established rights of which an objectively reasonable official would have known." Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 358 (2d Cir. 2004). "This is a doctrine that seeks to balance the twin facts that civil actions for damages may offer the only realistic avenue for vindication of constitutional guarantees, and that such suits nevertheless can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. . . .

"The Supreme Court has established a two-part inquiry to determine when

a district court should hold that the doctrine of qualified immunity bars a suit against government officials: (1) the court must first consider whether the facts alleged, when taken in the light most favorable to the party asserting the injury, demonstrate a violation of a constitutional right, Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); and (2) the court must then consider whether the officials' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known,' Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)." Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006).

In the present case, if the facts are taken in the light most favorable to the DiStisos, a reasonable finding would be that Cook, Uccello, and Couture knew about the alleged racial discrimination against Nicholas and failed to respond to it. Nicholas's exposure to a racially discriminatory environment therefore would demonstrate the violation of his constitutional right to be free of such discrimination. That right is clearly established, and a reasonable person would have known that there is a prohibition against school officials' knowing failure to remedy racial discrimination. Cook, Uccello, and Couture are accordingly not entitled to summary judgment on counts one, four, and seven of Robin DiStiso's complaint.

The second issue to consider in the defendants' motions for summary judgment is whether Cook, Uccello, Couture, and Smyth intentionally inflicted emotional distress on Nicholas DiStiso. "In order for the plaintiff to prevail in a

13

case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . .

" 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965). Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Appleton v. Board of Education, 254 Conn. 205, 210-11, 757 A.2d 1059 (2000).

The Court concludes that the DiStisos' testimony, if credited by the jury, is sufficient to establish the claim that Cook, Uccello, Couture, and Smyth

14

intentionally inflicted emotional distress on Nicholas. If the jury finds that Cook, Uccello, Couture, and Smyth knew about the allegations of racial discrimination and yet failed to respond to them adequately, the average member of the community would regard that conduct as extreme and outrageous. Cook, Uccello, Couture, and Smyth are accordingly not entitled to summary judgment on counts three, six, nine, and fourteen of Robin DiStiso's complaint.

The third issue to consider in the defendants' motions for summary judgment is whether the town and board failed to train and supervise the Wakelee staff to stop racial discrimination. The claims against the town and board were brought pursuant to Monell v. Dept. of Social Servs., 409 U.S. 658 (1978), which permits local governing bodies to be sued under 42 U.S.C. § 1983 for constitutional deprivations that result from official policy or custom. Monell does not allow respondeat superior liability under § 1983. See, e.g., Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir. 2007). In the present case, there is no evidence that the town or board had an official policy or custom of condoning racial discrimination. The town and board are therefore entitled to summary judgment on counts eighteen and nineteen of Robin DiStiso's complaint.

The fourth issue to consider in the defendants' motions for summary judgment is whether Smyth negligently failed to train and supervise the Wakelee staff. Smyth moves for summary judgment on the ground that he is entitled to governmental immunity under Connecticut law. "[A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be

liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . The word ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . . The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." Fleming v. City of Bridgeport, 92 Conn. App. 400, 406-407 (2005).

Smyth's alleged failure to train and supervise is clearly a discretionary act. See, e.g., Hughes v. City of Hartford, 96 F. Supp. 2d 114, 119 (D. Conn. 2000). As to the one applicable exception to immunity from liability for a discretionary act, "[t]he identifiable person-imminent harm exception applies not only to identifiable individuals but also to narrowly defined classes of foreseeable victims. . . . In delineating the scope of a foreseeable class of victims exception to governmental immunity, [Connecticut state] courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . In applying these factors, . . . school children, who are statutorily

16

required to attend school, are an identifiable class of foreseeable victims." Colon v. City of New Haven, 60 Conn. App. 178, 184 (2000).

The question is therefore whether Nicholas was subject to imminent harm. Factors indicating that a condition is imminent include whether the condition is of limited duration and location and whether it carries the potential for significant and foreseeable harm. See id. at 185-88. There is no evidence that the racially motivated conduct against Nicholas was of limited duration and location because it is alleged to have occurred throughout his year and a half at Wakelee and in various areas of the school. See Doe v. Board of Education, 76 Conn. App. 296, 304-305 (2003) ("[T]he plaintiffs have not alleged facts showing that the danger to students was limited in duration and geography. . . . [T]he harm in the present case potentially could have occurred any time that students traveled without permission to any unsupervised areas of the school."). Smyth is therefore entitled to governmental immunity on count fifteen of Robin DiStiso's complaint.

The final issue to consider in the motions for summary judgment is Couture's alleged assault and battery of Nicholas. Although neither the police nor DCF could substantiate the allegation, the DiStisos testified that Nicholas manifested physical symptoms of an assault, such as holding his arm in an unusual manner. Furthermore, Nicholas's physician, Oscar Ransome, testified at his deposition that it was possible that Nicholas had been injured. The nature of the physical contact, if any, between Nicholas and Couture is therefore entirely a question of fact for the jury to decide. Couture is not entitled to summary

17

judgment on counts ten and eleven of Robin DiStiso's complaint.

The motions for summary judgment filed by the town and board [Docs. #49, 50] are GRANTED. Smyth's motion for summary judgment [Doc. #51] is GRANTED as to the count of negligent supervision (count fifteen) and DENIED as to the count of intentional infliction of emotional distress (count fourteen). The motions for summary judgment filed by Cook, Uccello, and Couture [Docs. #52, 53, 54] are DENIED.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 20, 2008.